WESTERN DISTRICT OF TN
FILED IN OPEN COURT:
DATE: 7-1-22
TIME: 2:00 pm
INITIALS: mw

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Cr. No. 1:19-cr-10143 |
| JENNIFER HALL, | ) |
| Defendant. | ) |

# PLEA AGREEMENT

Come now the parties herein, including the defendant, JENNIFER HALL being represented by counsel, Dianne Smothers, and the United States, being represented by Matthew Wilson, Assistant United States Attorney for the Western District of Tennessee, and hereby agree as follows:

1.  The following plea agreement constitutes the entire agreement between the parties, and the parties agree that any issues not specifically addressed by this plea agreement shall be resolved by the court in accordance with the applicable statutes, guidelines, rules and case law.

2.  The defendant agrees to plead guilty to Counts 3, 6, and Counts 7 through 20 of the Superseding Indictment in the above-styled cause. At the time of sentencing, the Government will move to dismiss the remaining counts as to the defendant. There are no agreements on the forfeiture allegation, the amount of loss, or restitution, and these matter will be addressed at the defendant's sentencing. There will be a $1600.00 special assessment due at sentencing.

**STIPULATION OF FACTS IN SUPPORT OF GUILTY PLEA**

3.  In 2018, agents and task force officers with the United States Secret Service

began an investigation into bank and wire fraud in Jackson, Tennessee. Law enforcement discovered a number of checks that had been negotiated and endorsed by persons other than payees, and without their consent. The investigation revealed that the defendant, Jennifer Azbill Hall was employed at B&H Finance and that she was a 10 percent owner in the company. The defendant would present R.S., the owner of B&H Finance, with false loan proposals, to convince R.S. to lend money to various persons. This was false, because the persons had neither requested nor received the additional loan funds. Instead, the defendant would bring endorsed checks made out to the unwitting persons to the business owned by Benjamin Vargason, and have Vargason deposit and cash the checks into his company's account. The defendant would give Vargason a portion of the amount of the checks, and Vargason would write her another check from his company's account for the remaining balance. The checks deposited and cashed at Vargason's business by the defendant totaled approximately $819,916.63, and had been issued by and were negotiated through banks which were insured by the Federal Deposit Insurance Corporation.

Count 3 (Bank Fraud): Between on or about June 15, 2015, and June 25, 2015, the defendant brought Vargason an endorsed check made payable to an individual identified as B.G.., which was drawn on the B&H Finance Account at Commercial Bank, a federally insured institution. The check, which was endorsed without B.G.'s consent, was deposited into Vargason's business account at Bancorp South, also a federally insured institution, where it was negotiated. As a result, the $4,000 was never paid to B.G.

Count 6 (Bank Fraud): On or about April 27, 2016, the defendant brought Vargason an endorsed check made payable to an individual identified as J.G., which was drawn on the B&H Finance Account at Commercial Bank, a federally insured institution.

The check, which was endorsed without J.G.'s consent, was deposited into Vargason's business account at Bancorp South, also a federally insured institution, where it was negotiated. As a result, the $10,000 was never paid to J.G.

Count 7 (Bank Fraud): On or about May 23, 2016, the defendant brought Vargason an endorsed check made payable to an individual identified as D.D., which was drawn on the B&H Finance Account at Commercial Bank, a federally insured institution. The check, which was endorsed without D.D.'s consent, was deposited into Vargason's business account at Bancorp South, also a federally insured institution, where it was negotiated. As a result, the $16,000 was never paid to D.D.

Count 8 (Bank Fraud): On or about September 21, 2016, the defendant brought Vargason an endorsed check made payable to an individual identified as U.W., which was drawn on the B&H Finance Account at Commercial Bank, a federally insured institution. The check, which was endorsed without U.W.'s consent, was deposited into Vargason's business account at Bancorp South, also a federally insured institution, where it was negotiated. As a result, the $6,476.18 was never paid to U.W.

Count 9 (Bank Fraud): On or about November 7, 2016, the defendant brought Vargason an endorsed check made payable to an individual identified as D.D., which was drawn on the B&H Finance Account at Commercial Bank, a federally insured institution. The check, which was endorsed without D.D.'s consent, was deposited into Vargason's business account at Bancorp South, also a federally insured institution, where it was negotiated. As a result, the $8,700 was never paid to D.D.

Counts 10 through 20 (Wire Fraud): In 2018 and 2019, the defendant was employed as a bookkeeper at J.M.S. Restoration LLC, a business in Jackson, Tennessee. She had access to the company's bank accounts, including at Simmons

Bank, a federally insured financial institution. The owner of the company discovered the defendant had used the company's account to pay personal expenses without authorization, and to send money to a company, CastleGate Kennels, which was owned and operated by family members.

On or about May 1, 2019, the defendant caused approximately $1,409 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about May 6, 2019, the defendant caused approximately $404.12 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about May 13, 2019, the defendant caused approximately $639 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about May 16, 2019, the defendant caused approximately $901 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about May 28, 2019, the defendant caused approximately $408, $496, and $1099 to be wired in three separate transactions from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about June 3, 2019, the defendant caused approximately $2,201 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about June 4, 2019, the defendant caused approximately $1099 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. On or about June 7, 2019, the defendant caused approximately $906 to be wired from the JMS account at Simmons Bank to a Paypal Account of CastleGate Kennels. Also on or about June 7, 2019, the defendant caused approximately $21,123.84 to be wired from the JMS account at Simmons Bank to Newrez-Shellpoint Mortgage Servicing, which held the mortgage on her primary residence located at 1144 Yuma Road, in Wildersville, Tennessee. All of the above-referenced wires traveled in

interstate commerce.

## BREACH OF PLEA AGREEMENT BY THE DEFENDANT

4. Should it be judged by the Government that the defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting, obstructing or impeding justice within the meaning of United States Sentencing Guidelines Section 3C1.1, or has failed to make any court appearances in this case, from the date of the defendant's signing of this plea agreement to the date of the defendant's sentencing, or if the defendant attempts to withdraw her plea, the Government will be released from its obligations and would become free to argue for any sentence within statutory limits. Such a breach by the defendant would not release the defendant from this plea of guilty.

## CONCESSIONS BY THE GOVERNMENT

5. The Government will recommend that the defendant receive a full reduction for acceptance of responsibility under U.S. Sentencing Guidelines § 3E1.1, providing the defendant commits no new criminal offenses and continues to demonstrate an affirmative acceptance of responsibility, including acknowledging guilt in open court to the facts as set out in the plea agreement. However, the defendant understands that whether or not acceptance of responsibility is granted is a matter to be determined by the district court. Failure of the district court to grant acceptance of responsibility is not a basis for the defendant to withdraw the guilty plea or to appeal her sentence.

6. The defendant retains all rights to appeal any issues regarding her sentence, including the amount of loss, restitution, and forfeiture rulings of this Court.

## PLEA AGREEMENT CONSTITUTES THE ENTIRE AGREEMENT

7. There are no other agreements between and among the parties to this agreement.

The defendant is satisfied that all acts and/or any omissions of counsel for the defense have been the result of reasonable professional judgment and that defendant has been provided adequate legal representation in this case. The defendant enters this agreement freely, knowingly, and voluntarily, and upon the advice of counsel.

Respectfully submitted,

JOSEPH C. MURPHY, JR.
United States Attorney

_____
DIANNE SMOTHERS
Counsel for the Defendant

_____
MATTHEW WILSON
Assistant U.S. Attorney
109 South Highland, Suite 300
Jackson, Tennessee 38301
(731) 422 6220
matthew.j.wilson@usdoj.gov

_____
JENNIFER HALL
Defendant

Date  7/1/22

6